CASE 5—PETITION EQUITY—APRIL 17.

# Simmons, &c., vs. McKay, &c.

#### APPEAL FROM BULLITT CIRCUIT COURT.

1. A deed executed in 1836, conveying to husband and wife land which had descended to her from her father at his death, and for which he held a title bond, *did not deprive the wife of any part of her inheritance,* and such land at her death descended to her heirs, subject to the life estate of her husband as tenant by curtesy. The recitals in said deed, showing that the land had descended to her, were sufficient notice, of her title, to subsequent purchasers from her husband and their vendees.

2. Reversioners may maintain a suit during the life of the life tenant or tenant by curtesy, to establish their claim to the land, and to be placed in a condition to make it available, when the time shall arrive, at which they will be entitled to the use of the estate.

3. Possession acquired and held under a life tenant cannot be adverse, during his lifetime, to those who are entitled to the estate after the termination of the life estate.

4. Judgments against infant defendants constructively served with process, without the appointment of a guardian *ad litem*, and without any defense for them, *are not void,* and, consequently, are valid until set aside or reversed. (*Pond vs. Donaghy, &c.,* 18 *B. Mon.,* 558; *Smith vs. Ferguson, &c.,* 3 *Met.,* 424.)

A. H. Field and
Bullock & Anderson,                    For Appellants,

CITED—

1 *Dana,* 35; *Ross vs. Garrison and wife.*
1 *Dana,* 243; *Rogers vs. Grider.*
6 *Dana,* 387; *Thompson vs. Peebles.*
12 *B. Mon.,* 651; *Moore vs. Moore, &c.*
1 *Duvall,* 273; *Bullitt, &c., vs. Scroggin.*
3 *Bush,* 454; *Croan, &c., vs. Joyce, &c.*

Simmons, &c., vs. McKay, &c.

2 *B. Mon.*, 99 ; *King's heirs vs. Morris & Small.*

2 *B. Mon.*, 86 ; *Goodloe vs. Rhodes, &c.*

6 *B. Mon.*, 316 ; *Patrick's heirs vs. Chenault.*

8 *B. Mon.*, 33 ; *Maraman's heirs vs. Caldwell.*

3 *Dana*, 296 ; *Miller vs. Shackleford.*

4 *Bibb*, 436 ; *Massie vs. Sebastian.*

3 *Mar.*, 303 ; *Jones vs. Prewett.*

1 *J. J. M.*, 450 ; *Wallace vs. Maxwell.*

9 *B. Mon.*, 561 ; *Fitzhugh's heirs vs. Taylor.*

1 *Littell ;* *Cravens vs. Dyer, Dallam & Co.*

4 *Littell*, 20 ; *Pyle vs. Cravens.*

2 *J. J. M. ;* *Collard's heirs vs. Groom.*

6 *J. J. M.*, 45 ; *Graham, &c., vs. Sublett.*

4 *J. J. M.*, 653 ; *Banks vs. Johnson.*

2 *B. Mon.*, 456 ; *Schafer vs. Gates and wife.*

*Civil Code, section* 55.

18 *B. Mon.*, 560 ; *Pond vs. Doneghy, &c.*

4 *Met.*, 66 ; *Chandler vs. Commonwealth.*

2 *Duvall*, 269 ; *Bush vs. Bush.*

*Revised Statutes*, 1 *Stanton, sec.* 2, *p.* 546 ; *sec.* 5, *p.* 582.

2 *Met.*, 353 ; *Enders vs. Williams.*

3 *Met.*, 450 ; *Earle, &c., vs. Couch.*

4 *Met.*, 143 ; *Hurat, &c., vs. Courtenay, &c.*

T. W. RILEY,

WILLIAM JOHNSON,

E. E. McKAY,

R. H. FIELD, and

WM. R. THOMPSON,                                    For Appellees.

CITED.

2 *B. Mon.*, 457; *Schafer vs. Gates and wife.*

3 *Mar.*, 253 ; *Porter's heirs vs. Robinson.*

4 *Dana*, 429 ; *Bustard vs. Gates and wife.*

8 *B. Mon.*, 105 ; *Benningfield, &c., vs. Reed.*

*Civil Code, secs.* 55, 56, 131, 440, 441, 339, 74, 81, 698.
1 *Met.*, 353; *Enders vs. Williams.*
1 *Dana*, 38; *Ross vs. Garrison and wife.*
1 *Dana*, 243; *Rogers vs. Grider.*
1 *Duvall*, 272; *Babbitt vs. Scroggin, &c.*
6 *B. Mon.*, 315; *Patrick's heirs vs. Chenault.*
12 *B. Mon.*, 651; *Moore vs. Moore.*
2 *B. Mon.*, 103; *King's heirs vs. Morris & Small.*
2 *Mar.*, 65; *Cave vs. Sanders.*
7 *Dana*, 510; *Myers vs. Sanders.*
3 *Mon.*, 267; *Haynes vs. Oldham.*
9 *Dana*, 274; *Shackleford vs. Miller.*
*Act of* 1796; 1 *M. & B.*, 737–8.
1 *Mar.*, 210; *Mason and wife vs. Baker, &c.*
2 *B. Mon.*, 345; *Lewis vs. Love's heirs.*
6 *Dana*, 88; *Allison vs. Taylor and Washburne.*
8 *B. Mon.*, 12; *Weller vs. Cralle.*
9 *B. Mon.*, 513; *Trimble vs. Ratcliffe.*
6 *J. J. M.*, 83; *Poague vs. Boyce.*
4 *Dana*, 225; *Baker vs. Dobyns, &c.*
1 *Dana*, 531; *Doyle vs. Sleeper & Allsop.*
4 *Littell*, 273–75; *Winlock vs. Hardy.*
3 *Dana*, 338–9; *Dubois & Langer vs. Marshall.*
1 *J. J. M.*, 390; *Gully vs. Grubbs.*
4 *Mon.*, 51; *Jennings vs. Whittaker.*
5 *Johnson's Ch'y R.*, 438–9; *Rogers vs. Henderson.*
6 *Dana*, 394; *Thompson vs. Peebles' heirs.*

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

John Williams died intestate in the year 1833, leaving two children, Elizabeth, the wife of Humphrey Simmons, and Samuel B. Williams, his heirs-at-law, and possessed of one hundred and eighty acres of land, which he had purchased of Edwin Phelps, and for a title, held the bond

of Phelps, to whom he owed about one thousand dollars of the purchase money.

On the 17th of February, 1836, Simmons executed his note to Phelps for the one half of the unpaid purchase money, and John Anderson, as guardian for Samuel B. Williams, executed his note for the other half thereof; and on that day Phelps conveyed the said one hundred and eighty acres of land to Humphrey Simmons and wife, and to said Samuel B. Williams, reciting the executory sale to John Williams, and the undertaking by Simmons, and the guardian of Samuel B. Williams, to pay him the unpaid purchase price, in consideration of which he conveys said land to Humphrey Simmons and Elizabeth his wife, late Elizabeth Williams, and Samuel B. Williams, the only children and heirs of said John Williams, deceased, to be held, the one moiety thereof to said Simmons and wife, the other half to said Samuel B. Williams, and to their heirs forever. In 1838 said Samuel B. Williams, for a valuable consideration, sold and conveyed his moiety of said land to Humphrey Simmons; and on the 28th of March, 1845, he, Simmons, sold and conveyed it to Henry J. Craycroft, Mrs. Elizabeth Simmons, the daughter of the intestate, John Williams having died before the date of the last named conveyance. On the 27th of June, 1845, Craycroft sold and conveyed the land to W. W. Simmons, N. C. Summers uniting with said Craycroft in said conveyance, and releasing to said W. W. Simmons some claim he had acquired to the same by a purchase under execution sale; and in March, 1857, the heirs of W. W. Simmons conveyed it to appellees, Wesley Phelps and Samuel A. McKay.

On the death of John Williams, administration on his estate was granted to Humphrey Simmons; and after the

payment of all the decedent's debts, except the one owing to Edwin Phelps for the land, there remained of the personalty about two thousand five hundred dollars, one half of which he paid over to Anderson, the guardian of Samuel B. Williams, and the other half he retained.

John W. Simmons, Mary E. Dysart, and Nancy Bowers, joining the husbands of the two femes, brought this suit in equity in February, 1867, as heirs of Elizabeth Simmons, deceased, against McKay and Phelps, tenants in possession, claiming an undivided moiety of said one hundred and eighty acres of land at the death of their father, Humphrey Simmons, who, they admit, is entitled to a life estate therein as tenant by the curtesy, and is still living; praying that their rights may be settled, and their title may be placed on the proper basis by the court.

The defendants, in their answer, resist the relief sought on various grounds; one of which is, that, on the death of Mrs. Elizabeth Simmons, her husband took the absolute fee in the whole one hundred and eighty acres; another is, lapse of time, and others which need not be specifically named.

The court below, on final hearing, dismissed the petition; and that judgment appellants seek to reverse.

For appellants, it is contended that Mrs. E. Simmons inherited from her father, the one half of the one hundred and eighty acres, and, upon her death, her part of it descended to her children, subject to the life estate of her husband; and that her inheritance was not at all affected by the conveyance of E. Phelps, her father's vendor, to herself and husband jointly. While, in behalf of appellees, it is contended, that, by the conveyance of Phelps to Simmons and wife, they each took an entirety of the estate conveyed, were seized *per tout,* and not *per my,*

and, consequently, on the death of his wife, Humphrey Simmons, as survivor, took the whole of the estate conveyed to them; and this is the important question for solution in this case.

Various authorities are referred to as sustaining the respective sides of this question; but a critical review and analysis of all the cases cited will not be indulged on this occasion, and we will content ourselves by a reference to those in which the facts more nearly correspond with the one at bar, and by which it must be tested and decided.

It is certainly true that Mrs. E. Simmons held the undivided half of the land by descent from her father, independently of, and before the deed from Phelps to herself and husband was executed, subject, it may be, to the vendor's lien for her part of the unpaid purchase price; but she had done no act, so far as this record shows, by which she had divested herself of her title. She did not derive her title, therefore, to her own inheritance, by the deed from Phelps. She had a right to a conveyance for one half of the land to herself from him when he received the purchase money due him, by whomsoever it may have been paid; or, at all events, no one had a right, voluntarily, to pay that debt, and, in consideration thereof, appropriate the whole of her land to himself, not even the husband; and Phelps was not authorized to convey the land to any one but the heirs of his vendee, in discharge of his obligation to convey, and by his deed he could not deprive Mrs. Simmons of her legal rights. But here it appears that Humphrey Simmons was the administrator of her father, and that he had means of the estate sufficient to pay the debt due to Phelps, after payment of all other debts of his intestate; and as it was his legal duty to pay this debt, the

court will presume he did his duty, and paid the debt with the funds in his hands as administrator of his intestate.

There is no evidence that the deed was made to Simmons and his wife by her procurement and sanction, or that she ever knew or was informed of the character or effect of the deed before her death, which occurred in about three years after the conveyance was made. Consequently, when she died, her undivided half descended to her heirs, subject to the life estate of their father, who is tenant by the curtesy.

This question we regard as settled in *Babbitt, &c., vs. Scroggin, &c.*, 1 *Duvall*, 272; *Croan, &c., vs. Joyce*, 3 *Bush*, 454; and in *Thompson vs. Peebles' heirs and others*, 6 *Dana*, 388. In the last named case this court held that Mrs. Thompson, who was a daughter of Nathaniel Hart, deceased, was entitled, by descent, to one ninth of a tract of land for which her father held a title bond, and of which, after his death, Thompson, her husband, obtained the possession, and then sold the land to Peebles, who procured a title thereto from Bullock, to whom the land was patented; but her suit was dismissed on other grounds.

This case is essentially different from the case of *Ross vs. Garrison, &c.*, 1 *Dana*, 35, and subsequent cases following it, as must be apparent.

Nor can the lapse of time avail the appellees. The vendees of Humphrey Simmons are entitled to the possession during his life; and until his death the possession cannot be adverse to the claim of appellant, which event had not occurred when the suit was brought.

Nor are appellees entitled to the favorable consideration of purchasers without notice; for the deed from Edwin Phelps to Simmons and wife, and to Samuel B.

Williams, recites the manner in which and to whom the land descended on the death of his vendee, John Williams.

In the aspect of the case as presented, therefore, it seems that appellants are entitled to an undivided moiety of said one hundred and eighty acres of land, the possession of which to be postponed, until the death of the life tenant; and they had a right to maintain their suit in equity, to establish their claim, and to be placed in a condition to make it available when the time should arrive at which they would be entitled to the use of the estate.

Wherefore, the judgment is *reversed*, and the cause is remanded, with directions for further proceedings consistent with this opinion.

Appellants joined in their action against Phelps, McKay, and Simmons, another and distinct cause of action against said McKay and Simmons, for one hundred and ninety-four acres of land claimed by them under the will of their grandmother, Mrs. Velinda Henson, which they allege their father, the said Humphrey Simmons, sold and conveyed to said McKay, and which they allege he now holds wrongfully from them. By consent, both causes of action were prepared and heard as one suit; and plaintiff's petition having been dismissed as to this tract also, they seek a reversal of that part of the judgment also.

The title to this tract of land was once in Humphrey Simmons, which he conveyed to his mother, Mrs. Henson, and after her death, he conveyed it to McKay, he being her only child and heir at law.

By her will, Mrs. Henson devised all her estate to her grandchildren, the children of her said son and his wife

Elizabeth, and appointed her son trustee for them and executor of her will, with power and authority, if he should deem it to the interest of her said devisees, or any one of them, to sell any or all of said estate, and reinvest the proceeds in other estate, to be held by said devisees in equal portions. The proceeds and profits of the estate left by her, or of such as might be purchased with the price for which it was sold, were to be applied to the proper support and education of said devisees; and as they arrived at twenty-one years of age or married, respectively, they were to have their equal portions of said estate.

The original will bears date February, 1842. In May, 1847, she made a codicil, in which she restricted the power of her devisees and the trustee, in making sale of her slaves, that they were not to be sold out of the family. And on the 29th of May, 1849, she made another codicil, by which she substituted R. H. Field and Samuel B. Williams, or either of them who would act, as trustee to her devisees and executor of her will, in place of her said son, and revoked all powers conferred on him in her will and former codicil.

Appellee McKay was a subscribing witness to the will and both the codicils. After the death of the testatrix, her will and the codicils were offered to the proper court for probate; and on the 15th of November, 1852, the will and codicil of date May, 1847, were ordered to record by the court as the true last will and testament of Mrs. Velinda Henson; and the codicil of May, 1849, was rejected upon the evidence of Thompson and McKay, the subscribing witnesses thereto, for want of disposing mind of testatrix at the time, and which judgment is *unreversed*.

McKay, in his first answer, admitted that Mrs. Henson disposed of her estate by her will, a copy of which he

refers to, to show to whom she devised it, and that she owned the one hundred and ninety-four acres of land claimed in the petition, which passed by her will, and by the provisions of which, as he alleges, Humphrey Simmons was empowered to, and directed, in the exercise of his better judgment, to sell or dispose of all, or any part of the estate devised; and that he did, in the exercise of that power, for its full value, sell and convey said land to him; and he relies on said will, and the power conferred on said Simmons therein, and his sale and conveyance of said land to him, as a complete bar to plaintiffs' right. Although Simmons did not qualify as executor of the will, still we apprehend his power as the trustee of his children was ample, and he might under it sell and pass to a purchaser an indefeasible title, at least, while the judgment of the county court rejecting the last codicil remained unreversed; but in an amended answer McKay abandoned that ground of defense, and asserts that the statements in his original answer, that the one hundred and ninety-four acres of land were conveyed to him by Humphrey Simmons under the authority given him in the will of his mother, "*is untrue and wholly false;*" that he never qualified or acted as executor, administrator, or trustee under said will; nor did he, in anywise, act or exercise any authority in the settlement of the estate under the will; that he, said McKay, does not hold, nor claim to hold, the title to the land under said will, nor through Velinda Henson; and the averments in the original answer that he so held were untrue, and made by mistake. He alleges that he purchased the land of said Humphrey Simmons for a valuable consideration, which has been paid, and claims to hold the title from him directly, who had the title, and conveyed the same to him. He relies on lapse of time

and other matters of defense, which need not be specially noticed.

In his original answer he asserted, that, for the purpose of making his title more secure, he did, on the 21st of March, 1853, institute a suit in equity in the Bullitt circuit court against appellants; and, upon proceedings had in that case on hearing, it was adjudged against appellants that they should convey, by deed of release and quit claim, all the interest they had in said land by a given day, to him; and, on their failure to do so, the master was directed to convey for them, and on their behalf; that a conveyance was made to him by the master under that judgment; and it is insisted, that whatever title or interest appellants had under the will of their grandmother, this judgment divested them of it: while, on their behalf, it is contended that said judgment is utterly void as to them. The proceedings and judgment in that case are made exhibits by McKay's answer, and copied in this record; and, although appellants were non-residents and infants, facts known to McKay, no guardian was appointed to defend for them, and a judgment was rendered against them, on constructive service of process, without any defense for them, by which they were adjudged to convey, by way of release and quit claim, all their right to said land, by a named day, to McKay; and on failure to do so, the master was ordered to convey the same for and on their behalf.

By section 55, Civil Code, no judgment can be rendered against an infant until after defense made by a guardian. The judgment in this case deprives the infants of whatever interest they may have in the land without the appointment of a guardian *ad litem*, and without any defense for them; but they were, as we have already seen, constructively served with process; so

that the judgment was not void, unless it is made so by the failure to appoint the required guardian to defend for the infants; and that question we regard as settled in *Pond vs. Doneghy, &c.*, 18 *B. Mon.*, 558; and also in *Smith vs. Ferguson, &c.*, 3 *Met.*, 424, where it was held that judgments rendered against infant defendants, without the appointment of a guardian *ad litem*, was erroneous only, and not void, and, consequently, valid until reversed. That being the case, said judgment was effectual to divest appellants of whatever title they had to said land; and, as it has never been reversed, they are concluded by it. The conclusion of the court on the effect of said judgment dispenses with the consideration of other questions raised; wherefore, the judgment dismissing the petition of appellants against appellee, McKay, for the one hundred and ninety-four acres of land, is *affirmed*.