CASE 36—PETITION EQUITY—OCTOBER 29.

# Kellar, &c., v. Stanley, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. AN ACTION IS NOT COMMENCED until a summons is issued or a warning order is made.

2. AN ATTACHMENT ISSUED BEFORE A SUMMONS IS ISSUED or a warning order is made is void, and confers upon the court no jurisdiction to sell the land of defendants constructively summoned after it is issued.

3. A SUMMONS to be valid must name the defendants to be summoned. Therefore, a writ commanding the officer to summons "the unknown children" of certain persons is not a valid summons, and the issual of such a process does not have the effect to commence the action.

4. A PURCHASER PENDENTE LITE is always treated as a purchaser with notice, and is, therefore, not a purchaser in good faith.

'5. LIS PENDENS.—Property obtained by the plaintiff in an action against a defendant constructively summoned cannot, in contemplation of section 417 of the Code, be regarded the subject of pending litigation until such defendant has entered his appearance and moved for a retrial of the action, and consequently another person may, before that is done, buy it of the plaintiff and be a purchaser in good faith.

6. ESTOPPEL.—One cannot question the validity of a will under which he claims.

7. ACTION TO QUIET TITLE—IDENTIFICATION OF PROPERTY.—The defendant in an action to set aside an attachment sale and deeds made by the purchaser to his vendees, and to quiet the plaintiff's title, cannot defeat the action upon the ground that the property is not sufficiently identified, it being described in a deed filed, in the return of the officer upon the attachment and in the judgment for its sale.

8. LIMITATION.—The owner of the fee in remainder may maintain an action against the life-tenant to quiet his title at any time before the termination of the life estate. Limitation does not run against the remainderman during the existence of the particular estate.

9. SAME.—An action to set aside a judgment upon the ground that it was fraudulently procured is barred after the lapse of ten years from the rendition of the judgment, regardless of the time when the fraud was discovered.

C. B. SEYMOUR, YOUNG & TRABUE FOR APPELLANTS.

1. The court having jurisdiction of the person and of the subject-matter, the judgment can not be collaterally attacked, no matter how irregular the proceedings. (Grigsby v. Barr, 14 Bush, 332.)

Kellar, &c., v. Stanley, &c.

.2. Jurisdiction in attachment cases depends upon the actual or construc-
tive service of process, and not upon the plaintiff's affidavit nor upon
the clerk's order. (Allen v. Brown, 4 Met., 342; Cooper v. Reynolds,
10 Wallace; Paul v. Smith, 82 Ky., 451; Freeman on Judgments,
sec. 119.)

LANE & BURNETT, JOHN STITES and FOUNTAIN T. FOX for
APPELLEES.

1. Remainderman may have action against life tenant to remove cloud
from title or to quiet title.   (Simmons v. McKay, 5 Bush, 32; Aikens
v. Settle, 4 Lea, 103; Dodd v. Benthall, 4 Heiskell, 608; Coleman v.
Sutterfield, 2 Head, 260; Chandler v. Chandler, 55 Cal., 267.)
2. Limitation does not run against remainderman until termination of the
particular estate and the right of possession has accrued.   (McCurry
v. King, 3 Humph., 274; Gill v. Fauntleroy, 8 B. M., 177; Vanarsdale
v. Fauntleroy, 7 B. M., 401; Merriman v. Caldwell, 8 B. M., 32;
Thurman v. White, 14 B. M., 569.)
3. A writ of attachment to be effective must run in the name of the Com-
monwealth of Kentucky.   (Sec. 4, art. 4, Constitution of Kentucky;
78 Kentucky, 278.)

.JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

By will admitted to record in 1843, in the State of
Mississippi, and subsequently recorded in the Jefferson
·county court clerk's office, William Cotton devised to
Mary Bryant, for life, remainder in fee to her children,
the lot of land in controversy situated in the city of
Louisville.

In 1847 Mary Bryant, her husband joining in the
deed, conveyed her interest in the lot to Henning, who
·conveyed to Delph, and in 1856 the latter conveyed the
.same interest to Michael Fillion, there being in the deed
to him the following recital: "The estate hereby con-
veyed being an estate for life of Mary Bryant and no
more (see will book No. 3, page 357, Cotton to Bryant;
deed book 68, Bryant and wife to Henning, and book
·69, Henning to Delph").

February ——, 1863, Fillion filed in the Louisville

Chancery Court a petition in equity against "the un-- known children of Mary Bryant and Charles Bryant, her husband," asking judgment for an alleged debt. against them, and the enforcement of a pretended lien. on the lot to satisfy it. He stated in the petition the lot in question had been devised by William Cotton. in the manner mentioned; that he had paid for Mary Bryant and her children, at her request, the sum of one hundred and twenty-nine dollars and two cents,. State and city taxes thereon, and for curbing and pav- ing in front of it, whereby a lien thereon was created; but concealed from the court the fact he was the owner of the life estate therein, and his own consequent lia- bility for the taxes and assessments.

February 27, 1863, the clerk of the court attempted to issue a summons against the defendants, directed to the marshal of the Louisville Chancery Court, and on the same day issued or attempted to issue an order of attachment upon the property of the defendants. directed to the same officer. February 28, 1863, the officer made return on the order of attachment that. he had executed it by delivering a copy of the same to the "tenant in possession, and by attaching a lot of ground on north side of Walnut street twenty-six and one-quarter feet front extending back same width to. alley, being same property devised by Cotton to Mary Bryant for life and to her children, by will recorded in will book 3, page 357." March 6, 1863, upon proof made in open court that "Charles Bryant and Mary Bryant, children and heirs of Mary Bryant, party defendant hereto, are non-residents of this State," an order of warning was made, and June 26, 1863, judg--

ment was rendered in that action for a sale of the whole estate in the lot, as well the interest of the plaintiff himself, though not so specially recited, as of the children of Mary Bryant, in order to satisfy the alleged debt and costs. And the sale having been made, was, October 16, 1863, confirmed, and the deed directed to be made to the plaintiff, who was the purchaser.

But it appears that in 1868, within five years from the rendition of the judgment, there was the following proceeding: "Came the defendants, Charles and Mary Bryant, Mary B., Sarah A. and John W. Bryant, by counsel, and filed their answer herein with notice executed on the plaintiff, and said defendants moved the court to retry the case." It further appears that at the same time the defendants executed and filed the bond for costs required in such cases. With their answer they filed written evidence of title, and the several conveyances by which the plaintiff had become and was in 1856, before the taxes and assessments mentioned in the petition accrued, owner of a life estate in the lot. They denied in their answer they were liable as owners of the interest in remainder for such taxes and assessments, or that the plaintiff was requested by Mary Bryant to pay therefor, and prayed for judgment in their favor and all proper relief. April, 1870, final judgment was rendered in that action, setting aside the judgment of 1863, and the sale made in pursuance of it, and dismissing the petition of the plaintiff, Fillion.

This action was instituted in 1883 by Mary Stanley and others, children of Mary Bryant and devisees of the will of William Cotton, against J. H. Kellar and

wife, L. V. Kellar.   In their petition, the plaintiffs, after reciting the history of their title to the lot, and of the action of Michael Fillion against them, allege that the judgment rendered therein in 1863 was fraudulently obtained by him; that July, 1864, he attempted to convey the entire estate in the lot to one Bensinger, and he in September, 1864, attempted to convey the same to L. V. Kellar, who, with her husband, claims she is the owner of the fee thereof, and holds the lot adversely to the plaintiffs, whereby there exists a cloud upon their title, and the market value of their estate in the lot is impaired.   The relief prayed for in the petition is, that the deed from Fillion to Bensinger, and the one from him to the defendant L. V. Kellar be set aside and held for naught, so far as either of them puiports to convey an estate in the lot greater than for the life of Mary Bryant; that the plaintiffs be adjudged the owners thereof, subject only to such life estate, and that their title be quieted.   And the judgment rendered is that they are the owners of the remainder in fee; that the deeds mentioned operated to invest the defendant L. V. Kellar with only such life estate; and the judgment of 1863 in favor of Fillion, and sale under it, are void, and divested the plaintiffs of no interest.   From that judgment Kellar and wife have appealed.

1. As appellant claims under the will of William Cotton, it does not seem to us she is in a position to call in question its validity, or deny it has been in due form of law probated and admitted to record in this State.

2. Nor can she defeat the action upon the ground the lot in controversy is not sufficiently identified; for it is described in the deed from Delph to Fillion, in the

return of the officer upon the order of attachment, and in the judgment for the sale of it.

3. The right of the owner of the fee in remainder to maintain an action during the tenancy for life and against the life tenant to establish his claim to real property, or to quiet his title, was recognized by this court in Simmons v. McKay, 5 Bush, 25, and is not denied by counsel for appellant. But it is contended that, as it is an action not specially provided for in chapter 71, General Statutes, it can, according to section 9, article 3 of that chapter, only be commenced within ten years next after the cause of it accrued.

It has been repeatedly held that limitation does not, during the existence of the particular estate, run in favor of the tenant for life against the owner of the estate in remainder; and that being so, it would seem that an action to quiet his title might be maintained by the latter at any time before the termination of the life estate. For it is difficult to understand how the right to quiet title, or establish a claim to land, may be barred by limitation, while the right to recover the same land may exist for an indefinite period afterwards.

It is alleged by the plaintiffs in this action that the judgment of 1863 was fraudulently procured by Fillion; but as more than ten years elapsed from the time it was rendered until the commencement of this action, it is clear that section 6, article 3, chapter 71, General Statutes, applies, and the relief cannot be given upon that ground.

5. The two main questions are, then, whether the judgment of 1870, setting aside the one rendered in 1863, and dismissing the action of Fillion, had the effect to

divest appellant Kellar of title. And if not, whether there exists any ground for the judgment rendered in this case.

By section 445 of the former, substantially the same as section 414 of the present Civil Code, a defendant constructively summoned in an action might, within five years after judgment, appear in court and have the action retried as if there had been no judgment, etc. But section 448 of the old, the same as 417 of the present, Code, is as follows :

"The title of the purchaser in good faith to any property sold under an attachment or judgment shall not be affected by the new trial permitted by section 445, except the title of property obtained by the plaintiff, and not bought of him in good faith by others."

By "good faith," as judicially interpreted, is meant a purchase made, not merely for a consideration, but also without notice to the purchaser of an adverse claim to the property by others. For "the taking an estate, after notice of a prior right, makes one a *mala fide* purchaser." Hence, a purchaser *pendente lite* is always treated as one with notice. (Owings' Ex'r v. Myers, 3 Bibb, 278.)

But obviously property obtained by the plaintiff in an action against a defendant constructively summoned can not, in contemplation of section 417 of the Code, be regarded the subject of pending litigation until such defendant has entered his appearance and moved for a retrial of the action. And consequently another person may, before that is done, buy it of the plaintiff and be a purchaser in good faith. And as before the defendants in that action did actually enter their appearance

and make the motion, Fillion, the plaintiff, sold and conveyed the lot to Bensinger, and it is not shown the latter had at the time of his purchase any notice of their claim, he must be considered a purchaser in good faith, and whatever title he or his vendee, Kellar, had acquired, remained unaffected by the judgment of 1870.

If, then, the court had, when the judgment of 1863 was rendered, jurisdiction of the persons of the defendants, and of the subject of the action, the sale to Fillion was legal, and the title acquired by appellant, as his remote vendee, is valid; otherwise, not.

By the warning order made in the case, jurisdiction of the persons of the defendants may be conceded as having been acquired; but whatever jurisdiction of the subject of the action there was, if any at all, existed alone in virtue of the attachment, for there was no other lien upon the lot.

Section 221 (194) of the former Civil Code provides that the plaintiff may, at or after the commencement of an action, not before, have an attachment against the property of the defendant. And in Hall v. Grogan, 78 Ky., 11, it was held by this court that "there is no *lis pendens* until a summons is issued or a warning order made," and that the attachment in that case was void, because there was no summons or warning order when it was issued.

Section 65 (39) is as follows: "An action is commenced by filing in the office of the clerk of the proper court a petition stating the plaintiff's cause of action, * and * by causing a summons to be issued, or a warning order to be made thereon."

As before stated, no warning order was made until

March 6, 1863, which was after the order of attachment was issued, and after the date of the levy as shown by the officer's return made February 28. The single inquiry then is whether a summons was issued before or at the time the order of attachment was issued.

The record does not show the precise day the petition was filed, but it may be assumed it was previous to or on February 27, the date of the attempt to issue the summons and of the order of attachment.

What purports to be a summons in this case is merely a command to the marshal "to summon the unknown children of Mary Bryant and Charles Bryant, her husband, to answer," etc., whereas, section 40 (66) of the Code requires that "the summons shall command the officer to whom it is directed to summon the defendant *named therein* to answer the petition filed by the plaintiff, giving his name, at a time stated therein, under the penalty of the petition being taken for confessed," etc. Independent of the plain language of the law requiring the summons to contain the name of the defendant, it is manifest it never was intended to leave to the officer the discretion, or to impose upon him the duty, of identifying defendants whose names are not given in the summons or known even to the plaintiff.

It seems to us the paper issued by the clerk in this instance as a summons can not be regarded as such, but is fatally defective.

As, therefore, there was neither a summons or warning order against the defendants when the attachment was issued, it must, in obedience to the clear requirement of the Code, and following the case of Hall v. Grogan, be held void. And being so, the court had

no jurisdiction of the subject of the action, and the judgment and sale under it of the lot in question conferred no title upon Fillion, the vendor of appellants.

Wherefore, the judgment is affirmed.