CASE 15.—ACTION BY EDWARD UHL AGAINST C. O. REYNOLDS, AS REGISTER OF THE LAND OFFICE, AND OTHERS FOR AN INJUNCTION TO PREVENT THE ISSUAL OF CERTAIN LAND CERTIFICATES.—May 18, 1905.

## Asher and Others v. Uhl.

Appeal from Franklin Circuit Court.

JAMES E. CANTRILL, Circuit Judge.

From the judgment for plaintiff certain defendants appeal. Affirmed.

Trial—Motion for New Trial—Pleading—Amended Answer—Sufficiency of Answer.

1. Where, after reversal of a judgment in favor of defendant and

after remand of the case to the Circuit Court, defendant filed
a pleading containing, among other things, a prayer for a new
trial, it could not be treated as a petition or motion for a
new trial.

2. Under the express provisions of Code Civil Practice, section
135, a supplementary pleading must allege material facts
occurring after the filing of the former pleading.

3. Code Civil Practice, section 134, provides that amendments
may be made in furtherance of justice by adding or striking
out a name, correcting a mistake in a name, inserting other
allegations material to the case, and, if the amendment does
not materially change the claim or defense, by conforming
the pleading or proceeding to the facts proved. Held, That
where a case has been appealed and the issues adjudicated,
and remanded with mandate to enter a conformable judg-
ment, on offer of either party to file an amended pleading
containing charges or denials different from the issues on
which the case was originally tried, it is necessary that such
party show by evidence why the matter contained in the ten-
dered amendment was not previously set up.

4. In a suit to quiet title, the issue was whether the lands in con-
troversy were embraced in a patent issued to C. and under
which plaintiff claimed, or whether they were vacant and
unappropriated, and, after reversal of a judgment in favor
of defendant, defendant by a proposed amended answer alleged
that the C. patent was itself embraced in a senior patent
and hence void, the answer alleging that defendant had
learned such facts from the opinion of the court on appeal,
which opinion had determined the location of the C. patent
on the ground, and defendant also elleged adverse possession.
Held, That it was proper to refuse to permit the proposed
amended answer to be filed.

ON REHEARING—

1. Equity—Jurisdiction—Multiplicity of Suits—A petition in a suit
to enjoin the register of the land office from issuing patents
to defendants on the theory that the lands sought to be
patented are vacant and unappropriated, which alleges that
defendants sought patents for the purpose of depriving plain-
tiff of his undisputed use of the land, of committing trespass
thereon under pretended color of title, and of creating a
cloud on plaintiffs title, and that the issuing of the patents
would aid defendant in carrying out such purposes, and would

cast a cloud on the title of plaintiff and result in a multiplicity of suits, and which prays that plaintiff be adjudged the owner of the land, states a cause of action in equity, though it does not state a cause of action under Ky. Stats., 1903, section 11, to quiet title; equity having jurisdiction to prevent the creation of a cloud on the title of another and to prevent a multiplicity of suits.

2. Same—Scope of Relief—Where plaintiff, in a suit to enjoin the register of the land office from issuing patents to defendants, sought to establish his right to the land in controversy against defendants, it was the duty of defendants to present all defenses which the law permitted them to make, and as against them plaintiff, on recovering judgment, was entitled to be protected.

3. Same—Complete Relief—Where equity had jurisdiction of a suit to enjoin the register of the land office from issuing patents to defendants, it was authorized to grant plaintiff full relief, and not only prevent the creation of a cloud on the title, but as between him and defendants to quiet title in him.

4. Pleading—Defenses—Failure to Plead—Effect—Under Civil Code Practice, section 113, sub-sections 2, 4, providing that a pleading may contain as many matters of estoppel and avoidance and may make as many traverses as there may be grounds for, and prohibiting inconsistent pleas, a defendant who fails to make as many consistent defenses as he has loses such of the defenses as he fails to set up.

5. Same—Amendments—In a suit to restrain the register of the land office from issuing patents to defendants, defendants asserted in their answer that the lands in controversy were vacant and unappropriated. The issue raised was litigated, and found in favor of plaintiff. Held, That defendants could not thereafter amend the answer by alleging that they held the lands under a patent issued prior to the patent under which plaintiff claimed title.

COOK & JONES, HAZELRIGG & CHENAULT, and N. B. HAYS for appellant.

POINTS AND AUTHORITIES.

1. The offering, after judgment, to file an amended answer praying for the vacation of the judgment and for a new trial, on the ground of newly discovered evidence, in support of which ground affidavits were filed, followed by orders showing that a motion for

a new trial was made and overruled, was a sufficient compliance with the provisions of the Civil Code relating to applications for a new trial, especially in an equity case. (Hackett v. Rosenham, 22 Ky. Law Rep., 1569; Murray v. Murray, 16 Ky. Law Rep., 332; Joseph v. Hotopp, 7 Ky., Law Rep., 285; Vogt Machine Co. v. Pa. Ironworks Co., 23 Ky. Law Rep., 2163.) And, even if this were not so, the plaintiffs having filed counter-affidavits thereby waived any irregularity in the proceedings.

1. The newly discovered evidence, to the effect that the lands in controversy are embraced within the Ben Say patent, is true.

2. This newly-discovered evidence is material, in that it destroys, or shows to be void, the patent on which the appellees rely to sustain their action for an injunction.

In an action to enjoin the issuance of patents to defendants for certain lands on the ground that said lands are embraced within a patent under which plaintiff claims, and of which lands plaintiff has constructive possession only, the defendants may defeat the action by showing that the lands are covered by an older patent than that under which the plaintiff claims title. (Section 4704 of Ky. Stats.; Green v. Bowling, 21 Ky. Law Rep., 1648; O. & B. S. R. R. Co. v. Wooten, 20 Ky. Law Rep., 383; Boreing v. Hurst, 20. Ky. Law Rep., 184; Wheeler v. Cist, 17 Ky. Law Rep., 1424; McMillan v. Hutcheson, 4 Bush, 611; Hartley v. Hartley, 3 Met., 56; Little v. Bishop, 9 B. M., 240; Taylor v. Fletcher, 7 B. M., 81.

3. The evidence that the Say patent covers the lands in controversy is newly-discovered—it was not known to appellants at the former trial.

4. The appellants were not lacking in reasonable diligence in failing to discover said evidence before the former trial.

Reasonable diligence, as used in sub-section 7 of section 340 of the Civil Code, does not require an effort by a party to discover evidence proving or tending to prove a given fact unless he has sufficient ground to believe it exists, or at least to put him on inquiry; and, therefore, in this action, the failure of defendants to discover, before trial, that the lands in controversy were covered by an older patent than that under which plaintiffs claim, was not such lack of diligence as deprives the defendants of the right to a new trial upon the ground of the discovery, after the trial, of evidence of that fact, the defendants having no knowledge of the existence of said older patent, as covering the lands in controversy, and there being nothing in said older patent, had they known of it, sufficient to put them on inquiry as to whether or not it embraced said lands. (Skinner v. Walker, 98 Ky., 729.)

And, moreover, the reiterated averments of the plaintiffs, in their pleadings, that said lands had never been granted to any one prior to the grant to Cheever relieved the defendants of the duty of making inquiry as to the scope of the Benjamin Say patent, even had they known of its existence.

5. The appellees cannot invoke the doctrine of constructive notice on the part of appellants as to the Say patent for the purpose of defeating the motion for a new trial.

Section 251 of the State Constitution does not render void the Benjamin Say patent, and has no application to this case. (Green v. Bowling, 21 Ky. Law Rep., 1648.)

The plea of adverse possession of the lands in controversy by Jackson D. Asher, set up in the amended answer offered in the lower court, is entitled to consideration as a factor, along with the newly-discovered evidence, in determining the motion for a new trial.

The Cheever patent, in the hands of the appellee, Turner, even though he be an innocent purchaser, is entitled to no favorable consideration by the courts of this State, but should be relieved against wherever such can be done consistently with good conscience and a proper sense of justice.

WILLIAM AYERS for appellees.

POINTS AND CITATIONS IN BRIEF FOR APPELLEES.

1. The supersedeas should be discharged. (Civil Code, section 749.)

2. The judgment of the lower court should in any event be affirmed as to the register of the land office, G. M. Asher, R. W. Asher and Newt. Gambrell.

3. The judgment of the lower court, rendered September 5th, 1902, is correct in form, is a proper sequence of the pleadings and is in accordance with the opinion of this court rendered September 20th, 1901, and concludes all questions that were raised or might have been raised on that record. (79 Ky., 114, Smith v. Brannon; 81 Ky., 16, Francis, &c., v. Wood, &c.; 14 Bush, 746, Davis, &c., v. McCorkle.)

4. The lower court did not err in refusing to set aside above judgment and allow the amended answer and counter-claim to be filed and grant a new trial, because:

(1) Said answer is wholly inconsitsent with the former pleadings of appellants, is not in furtherance of justice, is based on no substantial rights of appellants, and changes substantially the

Asher and Others v. Uhl.

former defense.   (14 Cyc. of Pl. and Pr., 797, note; 14 Cyc. of Pl. and Pr., 991, and note 5; 19 Ky. Law Rep., 152, C. & O. Ry. Co. v. Friel; 16 Ky. Law Rep., 318, Stroud v. Simpson & Co.; 83 Ky., 416, Greer v. City of Covington.)

(2) No adverse possession is shown by appellants.   (22 Ky. Law Rep., 1919, Helton v. Strubbe; 25 Ky. Law Rep., 1192, Owsley, Sr., v. Owsley, Jr.; Hall v. Blanton, January 13th, 1904.)

(3) Even if title by adverse possesion were shown, it should have been originally pleaded if at all, and cannot now be pleaded. (22 Ky. Law Rep., 1510, Prater v. Campbell; 8 Bush, 441, Dickinson, &c., v. Trout, &c.)

(4) The alleged newly discovered evidence is not of that "permanent and unerring" character, as to the location of the alleged senior grant, necessary to be shown in support of application for a new trial.   (14 Ky. Law Rep., 940, Mud River Coal Co. v. Tipton.)

(5) Appellants have not shown due diligence as to the alleged newly discovered evidence.   (23 Ky. Law Rep., 317, Overstreet, &c., v. Brown, &c.; 23 Ky. Law Rep., 591, Johnson v. Carter; 1 Met., 224, Denny v. Wickliffe; 20 Ky. Law Rep., 1331, Howton, &c., v. Roberts, &c.; 3 J. J. M., 522, Ewing v. Price.)

(6) The preponderance of evidence shows that appellant, Asher, as a fact, knew of the Say patent long prior to the first trial in the lower court in 1899, and then knew or had means and opportunity of knowing its probable location, if it can or has been located at all; and at all events knew enough to be put on inquiry and to be chargeable with lack of diligence.

(7) There is no satisfactory evidence that appellants have in fact located or can locate said Say patent or that it covers any of the land in controversy; and if it covers any of it the part so covered is not shown with sufficient certainty to justify reversal of the lower court.

(8) Even if the Say patent were shown to cover the land in controversy, it cannot avail appellants.   (23 Ky. Law Rep., 1838, Jones v. Patterson.)

(9) The merits and equities of the case are with the appellees.

OPINION BY M. C. SAUFLEY, SPECIAL JUDGE—Affirming.

This is the second appeal of this cause.   On the first appeal (64 S. W., 498) the present appellees held the position of appellants.   The opinion was rendered on the 20th day of September, 1901.   Only a brief refer-

ence to it and the record on which it is based will be necessary to an understanding of the questions involved in this appeal. On the 5th day of September, 1894, the present appellee, Edward Uhl, filed in the Franklin Circuit Court a petition in equity against the register of the land office, the present appellants, A. J. Asher and others, exhibiting his title to a large tract of land lying in Clay county by virtue of a patent to John H. Cheever, issued in 1872. He complained that A. J. Asher and others, who were acting for him only, had caused to be made surveys of several distinct parcels of land lying within the boundary of the Cheever patent, claiming that such parcels were vacant land, and that they were taking the preliminary steps to have the certificates of survey carried into grant. He prayed an injunction against the register, and that he be adjudged the owner of the lands embraced in said certificates of survey. The defendant A. J. Asher and some of those who were associated with him in the attempt to appropriate these lands filed their joint answer on the 28th day of January, 1895. Characteristically, this answer was but a traverse. Defendants accepted the issue tendered by plaintiff that the lands attempted to be appropriated by them were not vacant, and gave emphasis to this denial by affirmatively alleging that they were vacant and unappropriated. A motion made by plaintiff Uhl to strike the affirmative words from the answer, presumably on the ground that the issue was complete without them, was overruled by the court, and this ruling imposed on plaintiff the necessity of a reply in traverse. The significant bearing of this fact on a question involved in the present appeal will be noted in the sequel of this opinion. Addition-

ally, the defendants denied that the Cheever patent covered any of the lands embraced in any of the certificates of survey, denied the correctness of the alleged boundary of said patent, and denied plaintiff's averment of its beginning corner. In a word, the traverse was complete. There was no fact pleaded in bar by way of confession and avoidance. On the issues made, voluminous evidence was taken. After elaborate and what must have been expensive preparation, the circuit court, by its judgment of April 27, 1899, dismissed the petition, except as to an inconsiderable part of the land, the title to which plaintiff had otherwise acquired, and plaintiff appealed. On the 20th of September, 1901, this court rendered an opinion reversing the judgment of the circuit court, holding that the lands Asher was endeavoring to appropriate are parts of the lands embraced within the Cheever patent. The cause was remanded for a conformable judgment. It is proper to observe that on the trial of the chief issue—that is, whether the boundary of the Cheever patent embraced the several tracts surveyed by Asher—the ascertainment of the locus of the beginning corner of said patent became a capital point of inquiry. This point definitely ascertained, the further solution of the question became unvexed. This court, in its opinion on the former appeal, declared in accordance with Uhl's contention that the initial corner is "at the intersection of the Clay, Harlan, and Bell county lines at the marked hickory tree in Foundation Gap, in Kentucky Ridge." On the return of the cause to the Franklin Circuit Court, the defendants tendered and offered to file, on the 26th of April, 1902, a pleading styled by them "Amended and Supplemental Answer and

Counterclaim,'' and with this pleading tendered and
offered to file the separate affidavits of A. J. Asher
and other persons. On the same day the plaintiff
tendered and moved the court to enter of record a
draft of a judgment prepared in conformity to the
appellate court's opinion. Objections being made to
both motions, the court took time. Subsequently the
plaintiff Uhl, in support of his objections to defen-
dant's motion, and to controvert the facts alleged in
the affidavits, filed the separate affidavits of himself
and other persons. At final hearing on the 5th day
of September, 1902, the circuit court overruled de-
fendant's motion to file the amended pleading and the
supporting affidavits, and granted plaintiff's motion
to enter the judgment tendered. From these judg-
ments appeal was granted, and on that appeal the
cause is now here.

The pleading offered by defendant is unique. Styled
''Amended and Supplemental Answer and Counter-
claim,'' it contains much which is not properly matter
of averment in a pleading, being distinctively eviden-
tial. It also contains a prayer that the judgment en-
tered pursuant to the mandate of the Court of Ap-
peals be set aside, for a new trial of the issues
involved, and for a judgment for the lands in contro-
versy. This pleading was verified on the 4th day of
January, 1902, and tendered for filing on the 26th of
April following. Yet the judgment it seeks to vacate
was not entered until the 5th day of September fol-
lowing. It is not possible to understand how a new
trial could have been granted when a previous trial
had not been had. There is a like impossibility to
comprehend how a judgment might be vacated which
had not been formally entered or even orally pro-

nounced. It is not a supplemental pleading, because there is no averment of a fact alleged to have occurred after the filing of a former answer. Civil Code Prac. section 135. Nevertheless, it seems to have been regarded and treated by the parties and by the trial court as both an amended answer and a motion or petition for a new trial. Regarded solely as a motion for a new trial, it would seem that the filing of it was a matter of right, if so be that a previous trial had been held. Regarded solely as an amended answer, the offer to file invoked the judicial discretion of the court. It is most obvious that an amendment tendered during the progress of a trial, or offered at the conclusion of the evidence to conform to it, is essentially different from a motion for a new trial after verdict or judgment. The former presupposes the pendency of a trial; the latter, that the trial is ended. There must have been a former trial and judgment before there can be a vacation of judgment and a new trial. The blending of incongruous procedures begets a confusion of practice, and should not be established as a precedent. A misconception of terms often leads to a misconception of rights.

It may, however, be said that when a case has progressed on definite issues to final judgment, an appeal taken from that judgment, those issues adjudicated by the Appellate Court, and the case remanded with mandate to enter a conformable judgment, on an offer by either party to file an amended pleading containing charges or denials different from or in conflict with the issues on which the cause was originally tried, it would be a necessary requirement of the party so offering that he show to the court by accompanying affidavits why the matter contained in

the tendered amendment had been delayed until that time. In this view of the case, while the affidavits offered by the opposing parties may not be regarded as evidence on a motion for a new trial—no judgment having previously been entered—we think they may be considered as they bear on the offer of defendants to file an amended answer. This amendment, in substance, charges two things: First. That a patent issued by the Commonwealth of Virginia in the year 1788 to one Benjamin Say for 90,000 acres of land situate in the then county of Lincoln, and now the counties of Bell, Clay, and Knox, and that this patent embraces within its exterior lines all the lands in controversy, and that the Cheever patent of 1872, which embraces the land in controversy, is in itself covered and embraced by the senior entry, survey, and patent of Say; the contention based on these facts being that the Cheever patent is void on the ground that the land embraced in its boundary was not vacant at the time the entry and certification of survey were carried into greater grant. Additionally, it is alleged by A. J. Asher, and sworn to by him, that on or about the 15th day of November, 1901, he discovered for the first time the existence of the Say patent, and could not by reasonable diligence have discovered it sooner; that, he had no knowledge or information as to the location of the lands embraced in the Say patent prior to the reversal of the circuit court's judgment of 1899; and with greater particularity he alleges: "That said Cheever patent, as located by the opinion of the Court of Appeals, embraces the lands in controversy, and that it is also covered and embraced by the senior entry, survey, and patent of said Benj. Say for said 90,000 acres. That he has learned these facts since

Asher and Others v. Uhl.

the decision and judgment of this court, by the loca
tion of the Cheever patent, by the opinion of the
Court of Appeals and the facts herein set out, and he
could not with reasonable diligence, or with ordinary
expense or time, or otherwise, except by the opinion
of the said Court of Appeals, determine the location
of the Cheever patent.'' By this statement in greater
detail, Asher reveals the sources, and. approximately
the time, of his first information on two points: (1)
That the Cheever patent embraces the lands in contro-
versy   (2) That the Say patent embraces the Cheever
patent, so far as the lands in controversy are con-
cerned.   Beside, he says he learned these two facts
from the opinion of this court, and the facts herein
set out.   There are no facts set out which might lead
to any part of this information, except his statement
that in 1894 (prior to the institution of this suit) he
employed Calvin Hurst, a surveyor, to make a survey
and determine whether the Cheever patent could be
located.   The information thus obtained is in no sense
newly discovered, and, as a separate fact, is wholly
unavailing on the offer to file an amendment.   The
only remaining source of information is the opinion
of this court.   Inasmuch as the opinion is absolutely
silent on the subject of the Say patent, neither the
grant itself nor the name of the grantee appearing on
it, nor any reference, direct or remote, to it, it is most
difficult to perceive how defendant Asher procured his
first information that the Say patent covered the
Cheever patent from this court's opinion of Septem-
ber, 1901.   His further statement that he had no in-
formation of the existence of the Say patent prior to
the circuit court's judgment of 1899 must be credited,
if at all, against much weight of evidence.   Beyond all

reasonable doubt, the opposing proof shows that he is incorrect. It is probably true that defendant could not have foreseen that this court would adjudge that the beginning corner of the Cheever patent is at the intersection of the Clay, Harlan, and Bell county lines at a marked hickory in Foundation Gap, in Kentucky Ridge, nor the sequence from this that the Cheever patent covers the land in controvesy. But this was his own mistake or inference. Before the circuit court judgment of 1899 he was in possession of record evidence of every fact relating to that particular point in controversy. These facts induced the appellate court not to locate the beginning corner, but to adjudge as a matter of fact where it had been located by the survey precedent to the Cheever patent. It was not the judgment that located the beginning corner; that was fixed and established by the surveyor. The locus of it was only ascertained by the court, and ascertained by facts which Asher himself had in part exhibited to the court. He had full opportunity to ascertain the same thing himself. His failure to do so was a failure of judgment, and not a want of opportunity. For this reason, he cannot be placed in a better attitude for reopening this controvesy than any other disappointed litigant who makes erroneous deductions from existing facts.

The provisions of the Code (section 134) on amendments are liberal, and so designed. Much is left to the discretion of the court "in furtherance of justice," but it is a judicial discretion to be exercised within expressed limitations. In furtherance of justice, the court may on proper terms permit an amendment (1) by adding or striking a name, (2) by correcting a mistake in name or otherwise; (3) by inserting

other allegations material to the case; (4) if the amendment do not materially change the claim or defense, by conforming the pleading to facts proven. These, in substance, are the limitations which the Code itself places on the court's right to permit an amendment. Great latitude of interpretation of the full meaning of this section has been upheld, but no case is cited which goes to the length of authorizing, after trial, judgment, appeal, and remanding, an amendment which tenders an issue directly opposed to the issues on which the case had been tried.

In his petition plaintiff Uhl alleged that the lands the defendants were surveying for the purpose of appropriation were not vacant. Defendants denied this, and, as heretofore stated, went beyond the requirement of exact pleading by making an affirmative allegation that they were vacant. Defendants resisted the motion of plaintiff to strike this affirmation, and procured a ruling of the court which forced a reply. The issues were complete without affirmation, which was but surplusage. But the persistence of defendants in bringing it to the notice of the court in duplicate form illustrates their conception of it both as an issue and a prime factor in determining the cause. If plaintiff had failed to make this averment, his petition would have been demurrable. It seems from the record that defendants eagerly accepted the issue. The case was tried on it, with the results herein stated. At this late stage, the defendants, having failed after full hearing and ample preparation, now offer to withdraw their former denial, and to substitute the plea that the lands which they themselves were undertaking to appropriate to their own use were not vacant, and therefore not proper objects of appro-

priation. The tendency of this defense being to defeat the claims of both parties, it does not impress one that it is in "furtherance of justice" to the defendants to allow them at this untimely juncture to interpose a plea "which not enriches them, and makes the plaintiff poor indeed!"

2. The second new defense set forth, in the amended answer is a plea of adverse possession of the lands in controversy. The defendant A. J. Asher makes this plea for himself only. He describes by metes and bounds and courses and distances a tract of land which may or may not be the lands, in whole or in part, in controversy herein. The defendant does not commit himself to any express statement as to the identity. By argument or deduction it may be inferred that the boundary he describes embraces the several parcels he endeavored to patent, and of this boundary he claims to have had the adverse possession the statutory period anterior to the bringing of the suit. It is needless to discuss whether the facts pleaded in this behalf show an adverse possession in law. Defendant himself admits that he knew every fact which would sustain this plea before he abandoned his rights as an adverse holder and endeavored to acquire title by entry, survey, and patent. That he abandoned such rights under the advice of counsel, whether correctly or mistakenly given, cannot legally affect the fact, which remains that he knew, when he filed his original answer, all that he set up on this subject in the amended answer. For this reason alone, ommitting others, it should not have been allowed.

The judgment of the circuit court is affirmed.

BARKER and CANTRILL, JJ., not sitting.

Response to petition for rehearing by SPECIAL
JUDGE J. E. ROBBINS, May 11, 1906.

This action has been twice considered by this court,
and the last opinion, which has been so vigorously
assailed by the learned counsel for appellants, is
found on page 307 of 87 S. W., and page 938 of 27
Ky. Law Rep. The earnestness with which they insist
that the court was in error in its last opinion has
caused us to give a very careful and extended investi-
gation to the questions raised by them in their peti-
tion for rehearing. Following the division made by
them, for convenience, we will consider in consecutive
order the two main contentions of appellants.

1. Was the judgment entered upon the return of
the case from this court, after the reversal, in ac-
cordance with the opinion?

Perhaps all the material facts necessary for the
proper consideration of the question now under con-
sideration are recited in the former opinions; but,
inasmuch as the court is of the firm conviction that
the learned counsel are radically in error when they
assert that the ownership of the land in controversy
was not the vital point in litigation we will recite a
few of the facts bearing on that question. In the
petition it was alleged in substance that the defend-
ants, acting for the use and benefit of A. J. Asher,
were seeking to obtain patents on the land in contro-
versy from the Commonwealth of Kentucky, on the
ground that the said lands were vacant an unappro-
priated, and that they sought these patents for the
purpose of endeavoring to deprive the plaintiff of the
possession and of his proper and undisputed use and
enjoyment of such lands and for the purpose of com-

mitting trespass thereon under pretended color of title, and for the purpose of creating a cloud on the plaintiff's title, and thereby, if possible, forcing plaintiff to sell same to said Asher, or to pay money to him to quiet the title and to secure the undisturbed use and enjoyment of the land. It is furthermore subsequently alleged that the issual of such patent would materially aid the defendants in carrying out said purpose and would cast a cloud on the title of the plaintiff, and would result in a multiplicity of lawsuits. In the prayer the plaintiff prayed to be adjudged the owner of all of said land, and that the surveys made by defendants be adjudged illegal and void, and that they gave them no right or interest in the land, and that the injunction be made perpetual, and the petition prayed for any other relief to which the plaintiff might be entitled.

The plaintiff based his right to recover chiefly under and by virtue of the Cheever patent, but he also set up five other patents, which had subsequently been issued to other persons, and the rights of which he had acquired. In their answer the defendants denied the plaintiff's ownership and title. They specifically denied that the plaintiff was the owner under the Cheever patent or otherwise of any part of said land, and they affirmed in direct contradiction of the allegation of the petition that said lands were all vacant and unappropriated, and, therefore, that they had a right to acquire title by patent from the Commonwealth. It will thus be seen that the gist of the action was the plaintiff's ownership of this property, and until this leading and vital fact is established, he has no rights in the premises, and when once established, he is entitled to be fully protected in the enjoy-

ment of his property. While this is not an action under section 11, of the Kentucky Statutes of 1903, to quiet title, still it is an action to prevent the creation of a cloud upon his title. The jurisdiction of the court of chancery, in this case, does not depend upon the statute. It is independent of the statute and is derived from the general equitable jurisdiction of the courts to prevent an injury, as well as to abate one after it has occurred. The statute is largely declaratory of the common law, and there are exceptions to the general rule established by it. It has been held since the adoption of this statute that a court of equity has jurisdiction to quiet the title of a remainderman against the life tenant when the life tenant is in the actual possession. Simmons v. McKay, 5 Bush, 25; Kellar v. Stanley, 86 Ky. 240, 5 S. W. 477.

It is fundamental law that courts of equity independent of any statute possess jurisdiction to prevent the creation of a cloud upon the title of another. Indeed, we do not understand that counsel for appellant controvert this general principle of law, for the authority which they cite (Barker v. Warren, 6 Ky. Law Rep., 86) decides this principle in this language: "It is true courts of equity have independent of statute entertained jurisdiction to prevent a person from creating a cloud upon the title of another as well as to remove a cloud already existing." Before the court could adjudge that the plaintiff was entitled to an injunction restraining the defendants from procuring the issual of a patent to them for said lands by the Commonwealth, it must be determined that the plaintiff was the owner of the lands in controversy. It is true the petition should have been dismissed,

unless the ownership of the plaintiff had been established, whether the defendants had any right to the land or not, but the ownership being found in the plaintiff, it necessarily follows that the ownership and title cannot rest in anybody else.

In this action the plaintiff was endeavoring to establish his right to the land in controversy against the defendants, and it was their duty to present any and all defenses which the law permitted them to make in this action, and as against them the plaintiff was entitled to be protected by the judgment in the full enjoyment of his rights to the land. The court in this instance had jurisdiction of this transaction because it prevented a multiplicity of suits. The plaintiff's right against all the defendants was based upon the same facts. Indeed, their pretended claims to this land were identical and they were all acting for the defendant A. J. Asher. For the sake of the argument, it may be conceded that the plaintiff could not maintain an action under the statute to quiet his title against the defendants without an allegation of possession in himself. Yet independent of statutory law, the court did have jurisdiction to prevent the creation of a cloud upon his title, and further, the court had jurisdiction because the determination of the questions at issue avoided a multiplicity of suits. It is a familiar doctrine that where a court of equity once obtains rightful jurisdiction of a subject, it will comprehend within its grasp, and decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy, and thus determine litigation.

In this case the court having rightful jurisdiction, it was authorized to grant the plaintiff full relief,

and not only prevent the creation of a cloud upon his title, but as between him and the defendants, to quiet him in the full enjoyment of his property. In discussing the principle here involved, the author of Pomeroy's Equity Jurisprudence (section 242) says: "It was a fundamental conception of the equity jurisprudence from the earliest periods as soon as its jurisdiction became established and its peculiar methods became developed, that the court of chancery, in any cause coming before it for decision, if the circumstances of the case would permit, and all the parties in interest were or could be brought before it, would strive to determine the entire controversy, to award full and final relief, and thus to do complete justice to all the litigants, whatever might be the amount or nature of their interest in the single proceeding, and thus to bring all possible litigation over the subject-matter within the compass of one judicial determination. We have seen, in the foregoing paragraphs, that this conception of the equity jurisprudence has been steadily applied throughout the whole history of the court to a great variety of circumstances, litigations, and reliefs. By virtue of its operation, and in order to promote justice, the court, having obtained jurisdiction of a controversy for some purpose clearly equitable, has often extended its judicial cognizance over rights, interests, and causes of action which were purely legal in their nature, and has awarded remedies which could have been adequately bestowed by a court of law." The same author, in section 243, says: "The doctrine that a court of equity may take cognizance of a controversy, determine the rights of all the parties, and grant the relief requisite to meet the ends of justice,

in order to prevent a multiplicity of suits, has already been briefly mentioned in a preceding section upon the 'concurrent jurisdiction.' The same remarks which were made in the commencement of the last section concerning the general principle that when a court of equity has acquired jurisdiction over part of a matter, or over a matter for some particular purpose, it may go on and determine the whole controversy and confer complete relief, apply with equal truth and force to the doctrine now under consideration, and need not therefore be repeated. Like that general principle, the 'prevention of a multiplicity of suits' produces a material effect upon both the concurrent and the exclusive jurisdiction.''

This principle of law is, in effect, recognized by the Kentucky Civil Code of Practice. Subsection 2, section 113, provides: ''A pleading may contain statements of as many causes of actions, legal or equitable, and of as many matters of estoppel and avoidance, legal or equitable, total or partial, and may make as many traverses   *   *   *   as there may be grounds for and in behalf of the pleader.'' This section is to be considered in connection with subsection 4, which prohibits inconsistent pleas, and it has been held that when a party has defenses which he fails to make, such defenses are lost. Hackett v. Schad, 3 Bush, 353. Of course, the judgment in this case quieting the plaintiff's title, as well as preventing the creation of a cloud thereon, is to be considered in connection with the record in the case, and should be understood as determining all the rights of the plaintiff and defendants with respect to title to these lands.

2.  Should the motion of defendant Asher to file

his amended and supplemental answer and counterclaim have been overruled?

It is manifest that the appellant in this instance did not pursue the usual course to obtain a new trial. Evidently he should have filed a petition, making the necessary averments, with the clerk, and had process issued thereon. He did not pursue the course prescribed by the Code of Practice either in name or form. He himself selected this unusual mode and offered his amended and supplemental answer and counterclaim, and sought to induce the court to permit it filed in this unusual way by force of affidavits which he tendered with the pleading. In its form, and under the circumstances, the court was under no obligation to permit it to be filed either with or without affidavits supporting it, for when objection was made the court should have required the appellant to pursue the course pointed out by law. Conceding that the judgment had been rendered before the court acted upon appellant's motion to file this pleading, he had no legal right to file it, because he was not proceeding to obtain a new trial in a legal way, and the court had the right, and, indeed, it was its duty, when objection was made, to refuse to permit the pleading filed. Scott v. Scott's Executors, 9 Bush, 176. The case of Hackett v. Rosenbaum, 47 S. W. 450, 22 Ky. Law Rep., 1569, in our opinion, has no application to the case in controversy. There the petition for a new trial and to vacate the original judgment was offered and allowed filed apparently without objection, and while the court in the opinion says that the appellee was not obliged to take notice of it until process had been served thereon, it seems that he did do so, and for that reason the objections which appellee

makes in the case at bar were not raised in that case. Hence, it appears to us that the case of Scott v. Scott's Executors, cited above, is in point.

Waiving the irregularity of the proceeding, however was the appellant entitled to file the pleading?

It presented two new issues. It alleged the existence and discovery of the Say patent, and its priority over the Cheever patent, and it furthermore alleged that appellant, A. J. Asher, had been in the adverse possession of these lands for more than 20 years before the institution of the action. It is not contended by Asher, and such contention would be preposterous, that he did not know that he had been in the adverse possession of these lands at the time of the filing of his original answer, and we do not understand that it is now seriously contended that he should be permitted after this long delay to litigate this question with the appellee. In the original answer the title of the plaintiff was not only denied, but it was affirmatively asserted that the lands in controversy were vacant and unappropriated, and for this reason the appellants were seeking to obtain patents from the Commonwealth to these lands. If, after making this plea, the appellants in the original answer, had set up the Benjamin Say patent, a prior title, the court evidently would have required them to elect upon which defense they would rely because this latter plea is wholly inconsistent with the first. They would not be permitted to allege in one paragraph that the lands were vacant and unappropriated, and in another paragraph to allege that these lands had been patented by Benjamin Say many years before the Cheever patent was issued. Such inconsistent pleas would not be tolerated. Now, can it

Asher & Others v. Uhl.

be contended with any reason that the appellants would not be permitted, in the original answer, to rely on this defense because of its inconsistency, and yet say that after they had litigated the issue that the land was vacant and unappropriated, and had lost, they might then in an amendment assert this inconsistent plea, and create an entirely different and new issue, and relitigate the right of the plaintiff under these circumstances? To such a contention we cannot give our consent. The appellants could not rely upon inconsistent defenses. Having selected their defense upon which they would stake their right, and having lost, they should not be permitted to retrace their steps, and take a different or inconsistent course.

For these reasons, the petition for rehearing is overruled.